UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| ALFRED VELA, | ) |  |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 3:16 CV 51 |
| INDIANA DEPARTMENT OF CORRECTIONS, CORIZON HEALTH INC, and JOSEPH THOMPSON, | ) | |
| Defendants. | ) | |

## OPINION and ORDER

I.      BACKGROUND

Plaintiff Alfred Vela, a prisoner represented by counsel in this matter, is suing Corizon Health Inc. and a prison physician, Joseph Thompson, claiming that he received inadequate medical care after a slip-and-fall on ice while incarcerated, which lead to paraplegia. (DE # 1.) Defendants have moved for summary judgment[1] on plaintiff's claims, solely on the basis that plaintiff failed to exhaust his available administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). (DE # 18.) Specifically, defendants point to plaintiff's failure to file a formal grievance with the prison before filing suit, a fact which is undisputed.

---

[1] Because the Seventh Circuit has clearly stated a preference for separating exhaustion inquiries from summary judgment proceedings, *Wagoner v. Lemmon,* 778 F.3d 586, 592 (7th Cir. 2015), the court has construed defendants' motion for summary judgment as a motion to dismiss for failure to exhaust administrative remedies. (DE # 28.)

In an order dated January 24, 2017, the undersigned considered plaintiff's argument that his case should not be dismissed for failure to exhaust administrative remedies, because no remedy was available by the time he had reason to believe that he had received seriously inadequate care. Plaintiff pointed out that he submitted numerous Requests for Heathcare, and received healthcare each time. According to plaintiff, he did not realize that he was being inadequately cared for by prison medical officials until it was too late, when he was paralyzed. At this point, plaintiff argued, no further action by the prison could have supplied any remedy, and filing a grievance would be a unnecessary technicality. Defendants, on the other hand, pointed to plaintiff's awareness of his deteriorating condition, and argued that if plaintiff continued to have symptoms despite treatment, he should not have assumed medical staff was doing its job correctly.

After acknowledging that the burden of proof is on defendants on the issue of exhaustion, *Kaba v. Stepp,* 458 F.3d 678, 681 (7th Cir. 2006), this court examined two Seventh Circuit cases cited by plaintiff in support of his argument. First, in *Perez v. Wisconsin Department of Corrections,* 182 F.3d 532, 538 (7th Cir. 1999), the Seventh Circuit, in *obiter dicta*, described a hypothetical situation in which administrative remedies could conceivably be unavailable to a prisoner. The *Perez* court commented: "It is possible to imagine cases in which the harm is done and no further administrative action could supply any 'remedy.' . . . Suppose the prisoner breaks his leg and claims delay in setting the bone is cruel and unusual punishment. If the injury has healed by the time suit begins, nothing other than damages could be a 'remedy' and if the administrative

process cannot provide compensation then there is no administrative remedy to exhaust." *Id.* at 538.

Next, in *White v. Bukowski,* 800 F.3d 392, 395 (7th Cir. 2015), the Seventh Circuit built upon its *dicta* in *Perez* to hold that an incarcerated woman who gave birth to a baby with birth defects had no available remedies after the defects were discovered, and therefore was not required to exhaust administrative remedies before filing suit. The *White* court reasoned: "For how could a prisoner be expected to file a grievance that would be academic because no response would benefit him or her in the slightest?" However, the court went on to highlight the plaintiff's lack of awareness of her fetus's condition, explaining that "[t]he plaintiff *may have had no reason to think at the time that her medical care in the jail was seriously inadequate*, that it posed a threat to the fetus. By the time she discovered its inadequacy, or thought she had, which was when the baby was born with severe birth defects, it was too late for her to obtain a remedy of better prenatal care. . . . Likewise it was too late to request prompt transport to the emergency room for her delivery. There was no remedy within the power of the jail to grant for the baby's birth defects." *Id.* at 395 (emphasis added).

The undersigned concluded that, because no discovery had occurred in this case and the sequence of events related to the development and progression of plaintiff's condition, his awareness of his condition, and the information and advice he received from physicians, etc., was murky, questions of fact prevented the court from determining as a matter of law whether or not a remedy was "available" to plaintiff such that he was required to file a grievance before filing this lawsuit, in light of *Perez* and *White*. The undersigned referred this case to Magistrate Judge Gotsch to

recommend a resolution of the questions of fact and issues of law necessary to determine whether a remedy was "available" to plaintiff. (DE # 28.)

On June 28, 2017, Magistrate Judge Gotsch held a hearing in accordance with *Pavey v.Conley*, 544 F.3d 739, 742 (7th Cir. 2008). (DE # 48.) He also accepted post-hearing briefing from both sides. (DE ## 52-53.) On September 5, 2017, Magistrate Judge Gotsch issued a Report and Recommendation ("the Report"), in which he found plaintiff's testimony credible and recommended denial of defendants' request to dismiss this case for failure to exhaust administrative remedies. Now before the court is defendants' objection to the Report. (DE # 56.)

## II.     LEGAL STANDARD

When a party objects to a magistrate judge's report and recommendation, the district court "shall make a de novo determination of those portions of the report . . . or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). The district court has discretion to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*; Fed. R. Civ. P. 72(b).

## III.    DISCUSSION

Magistrate Judge Gotsch held a *Pavey* hearing at the undersigned's request. At that hearing, plaintiff testified that he was aware of his symptoms (progressive pain, loss of sensation in legs, etc.) and recognized that his condition was "not normal." (DE # 54 at 10:17-19.) He also testified that he repeatedly submitted Requests for Healthcare, and that he received healthcare each time he did so. (*Id.* at 18:21-23.) He testified that he did not file a grievance because he was submitting Requests for Healthcare, which he understood was the way to receive medical care in prison. (*Id.* at 19:16-21.) Plaintiff

further attested that he did not think that the severe pain and loss of feeling in his legs had anything to do with the quality of care that the prison medical staff was providing. (*Id.* at 22:23-24:2.) Plaintiff further testified that, at a point much later after his surgery, after he was unable to walk, and after meeting with attorneys, he realized that the medical care he received might have been inadequate. (*Id.* at 20:8-14.)

Counsel for defendants argued that plaintiff should have noticed his condition deteriorating and filed a grievance, so that prison medical staff had an opportunity to "take a second look" at his care. (*Id.*) Counsel for plaintiff retorted that plaintiff did not simply lie back and allow himself to dissolve into paraplegia; rather, he actively sought medical attention, and received it. (*Id.* at 27:1-5.)

After considering oral arguments made by counsel at the hearing and post-hearing briefing, Magistrate Judge Gotsch found plaintiff's *Pavey* hearing testimony to be credible and recommended that the undersigned find that plaintiff did not question the quality of medical care he was receiving from defendants in response to his Requests for Healthcare until after he was permanently paralyzed. (DE # 55 at 9.) Magistrate Judge Gotsch further recommended that the undersigned apply *White* to this case to conclude that no administrate remedy was available to plaintiff when he realized he may have received substantially inadequate medical care. (*Id.* at 11.)

Defendants filed an eleven-page objection to the Report. (DE # 56.) In it, defendants do not attack the fact that Magistrate Judge Gotsch credited plaintiff's testimony.[2] In fact, there appear to be no objections to Magistrate Judge Gotsch's

---

[2] Indeed, during the *Pavey* hearing, counsel for defendants appeared to concede the issue of credibility, stating: "[N]one of us have any reason not to [believe plaintiff's testimony.]" (DE # 54 at 28:5-7.)

findings of fact. Instead, defendants argue that the Magistrate Judge's findings were "contrary to law." (DE # 56.) While it is difficult to parse out exactly what "law" defendants are referring to, it is clear that defendants do not believe that *White* should apply in this case.[3] (DE # 56 at 4.)

As explained above, in *White*, the Seventh Circuit held that a prisoner who gave birth to a baby with birth defects had no available remedies, and therefore was not required to exhaust administrative remedies by filing a grievance before filing suit. The *White* court reasoned that filing a grievance would be academic because no response would benefit her. 800 F.3d at 395. The court emphasized that no remedy was available to the prisoner because "by the time she discovered [her treatment's] inadequacy, or thought she had, . . . it was too late for her to obtain a remedy of better prenatal care. . . . Likewise it was too late to request prompt transport to the emergency room for her delivery. There was no remedy within the power of the jail to grant for the baby's birth defects." *Id.* at 395.

*White* has been applied in cases similar to the one at hand. For example, in *Johnson v. United States,* No. 14 C 10461, 2016 WL 7440270, at *3 (N.D. Ill. Dec. 27, 2016), another inmate struck the plaintiff, Johnson, in the face with a wooden broom, which injured the plaintiff in his face and head. He was immediately taken to health services, but twelve days went by before he was again examined by medical personnel, despite

---

[3] Defendants devote a considerable amount of briefing to the rationale behind the exhaustion requirement and the unfairness that results to a prison and its staff when the exhaustion requirement is not adhered to strictly. However, defendants appear to overlook the fact that *White* articulates an exception to this requirement. It is plain that defendants dislike *White's* holding, yet it is still the law in this circuit, and this court cannot abrogate it.

multiple requests for treatment. After four additional days, an x-ray was taken, which revealed three facial fractures. Johnson filed suit without submitting a grievance. *Id.*

The *Johnson* court held that *White* controlled and the plaintiff could proceed to a lawsuit without filing a grievance. The court held that, in the time between the fracture and the eventual x-ray, Johnson could not have known that his facial fractures existed, of his options for treatment, and that if not treated his fractures would become permanent. *Id.* at *3. By the time the x-ray was performed and the condition became known (and, in turn, the knowledge of a claim for denial or delay of treatment), the damage was done. Accordingly, there were no administrative remedies that were "available" to Johnson at the relevant time that had any hope of providing him with relief. *Id.* No grievance could undo the damage, and there was no evidence that a grievance would have spurred a physical visit and an x-ray any earlier. *Id.*

In another case, *Pollard v. Dart,* No. 15-CV-4638, 2016 WL 5404978, at *3 (N.D. Ill. Sept. 28, 2016), the plaintiff alleged that he lost full function in his left hand due to a delay in the treatment of a bone growth. Plaintiff had initially sought medical treatment for pain in his hand, but did not receive it. He obtained a court order requiring the county jail to address his medical needs, and the bone growth was discovered, but the surgery that was subsequently scheduled never occurred. Pollard filed a defective grievance which was returned to him, but did not subsequently file a proper one. Months later, he was seen at an outside hospital, where he was told that due to the delay in treatment, he would be deprived of regular mobility in his hand. *Id.* at *1.

The court held that Pollard was not required to exhaust his administrative remedies by filing a second, proper grievance. *Id.* at *3. By the time he could have filed a

7

second, proper grievance, he had already lost full use of his left hand, so filing it would not have averted the harm that the defendants' conduct allegedly caused. *Id.*

This case is analogous to *Johnson* and *Pollard* in the ways that matter. As in *Johnson* and *Pollard*, by the time the plaintiff had reason to be concerned about the care he was receiving, permanent damage had occurred. Further, as in *Johnson* and *Pollard*, the filing of a grievance after irreversible damage occurred would have been merely academic, as no amount of grieving could avert that harm or provide a remedy.

As Magistrate Judge Gotsch noted, plaintiff's lack of serious concern over the quality of care he was receiving was reasonable; plaintiff knew that doctors were not magicians, and that despite best efforts, sometimes improvements do not occur. It is noteworthy that plaintiff frequently submitted Requests for Healthcare as his condition progressed, in accordance with the prison's procedures regarding healthcare needs. Like the plaintiffs in *Johnson* and *Pollard*, plaintiff was persistent in seeking healthcare. Plaintiff was clearly aware of his symptoms, frequently sought medical care to address them, and received care each time. That he was not more skeptical of, more dissatisfied with, or in possession of more technical medical knowledge regarding the medical care he was receiving does not doom his claim. By the time he reasonably did have concerns about the possibility of inadequate treatment, irreversible damage had occurred.

In sum, defendants have not sufficiently established that plaintiff had or should have had any knowledge that the medical treatment he repeatedly requested and received was seriously inadequate, or to employ the terminology of *White*, that it ultimately "posed a threat" to his ability to walk. 800 F.3d at 395. There simply is not enough evidence to convince this court that *that* degree of danger was perceptible or

should have been perceptible *before* plaintiff became paraplegic. Defendants carry the burden of proof on this issue, and they have not satisfied their duty. Accordingly, the court finds that *White* applies in this case and that no remedy was available for purposes of the exhaustion requirement.

IV.     **CONCLUSION**

Defendants have not met their burden of proving the availability of administrative remedies. Magistrate Judge Gotsch did not err. The court **OVERRULES** defendants' objection (DE # 56), **ADOPTS** Magistrate Judge Gotsch's Report and Recommendation (DE # 55), and **DENIES** defendants' motion for summary judgment (more aptly characterized as a motion to dismiss) on grounds of exhaustion (DE # 18).

                              **SO ORDERED.**

Date: February 20, 2018

                               s/ James T. Moody
                              JUDGE JAMES T. MOODY
                              UNITED STATES DISTRICT COURT